UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN RICHARD,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:19-cv-581

McFarland, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Kevin Richard filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed his disability applications in 2014, alleging onset in 2013. (Tr. 170-79). His claims were denied administratively. (Tr. 1-6, 13-29, 31-54, 79, 103). In November 2017, Plaintiff filed new disability applications (Tr. 719-30), and also appealed his prior denied claims to the district court. (Tr. 624-25). In July 2018, based on a joint remand motion, the court remanded the prior denied claims to the agency under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings. (Tr. 644-45). In October 2018, the Appeals Council vacated the ALJ's decision on the prior claims, consolidated all of Plaintiff's claims on remand, and ordered a new hearing and decision. (Tr. 646-50).

1

Plaintiff appeared with counsel and testified at a hearing on February 28, 2019, along with a vocational expert. (Tr. 550-72). An ALJ denied his claims on May 15, 2019. (Tr. 527-42). Plaintiff now seeks judicial review of the denial of his application for benefits.

Plaintiff was born in 1958 and was 55 years old at the time his application was filed. He graduated from high school and has past relevant work as an auto mechanic. He alleges disability based primarily on his mental impairments.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: foot drop and status post gunshot wound to the left foot, major depressive disorder (MDD), and obsessive compulsive disorder (OCD). (Tr. 531). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a full range of work with the following limitations:

> He can frequently balance. He can occasionally operate foot pedals with the left lower extremity. He can perform simple, routine, repetitive tasks in an environment where changes are no more than ordinary and routine and can be explained in advance. He cannot perform tandem work or close teamwork. He can not have contact with the general public and can have occasional and superficial contact with coworkers and supervisors with superficial defined as no tandem work, rapid production rate pace, or strict quota environments, and no transaction positions.

(Tr. 534). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is unable to perform his past relevant work. Nonetheless, there are jobs that exist in significant numbers in the national economy that he can perform, including such jobs as inspector, sorter, routing clerk and document preparer.

2

Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly weighing the opinion of Plaintiff's treating psychiatrist; 2) improperly weighing the findings of the consultative examiner and state agency consultant; and 3) improperly adjudicating this matter because he was not properly appointed. Upon close analysis, I find Plaintiff's first assigned of error to be well taken and dispositive.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Decision is not substantially supported

Plaintiff argues persuasively that the ALJ erred in failing to give controlling weight to the findings of Plaintiff's treating psychiatrist, Dr. Sharon Stanford. In evaluating the opinion evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' "*Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). A finding by the ALJ that a treating physician's opinion is not consistent with

5

the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected."* Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley,* 581 F.3d at 408.

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96–2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544. The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[ ] meaningful review of the ALJ's application of the rule." *Id.* Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547.

Here, in formulating Plaintiff's mental RFC, the ALJ gave some weight to the mental assessments completed by Dr. Stanford, plaintiff's treating psychiatrist. Notably, Dr. Stanford completed mental source statements (MSS) in February 2014, June 2014, December 2014, and April 2016 in which she opined that Plaintiff had moderate to marked mental limitations in his ability to perform in a schedule, maintain regular attendance, be

6

punctual, sustain ordinary, routine, normal workday without interruption from psychologically based symptoms, and respond to work changes. The ALJ determined that Dr. Stanford's limitations were extreme and were inconsistent with the mental evidence or record. (Tr. 540). In this regard, the ALJ noted that numerous mental status examination/psychiatric examinations of record document normal mood, affect, logical thought process, and average intelligence.  The ALJ further noted that Plaintiff displayed euthymic mood on occasion, had been described as "stable" and that Plaintiff acknowledged improvement with medications. The ALJ highlighted that  Plaintiff appears to have attended nearly all of his scheduled visits with primary care physicians and mental health appointments, which the ALJ found contrasts Dr. Stanford's opinion that he would be unable to maintain a schedule.  The ALJ further indicated that Plaintiff used public transportation.  In light of the foregoing, the ALJ found that "given such reports, along with the claimant's own reports of improvement and functioning, along with the relatively conservative treatment history and normal mental status examinations, the undersigned gives only some weight to the MSS provided by Dr. Stanford." (Tr. 540). The ALJ's findings with respect to Dr. Stanford, at least in part, fail to comport with Agency regulations and controlling law.

As noted above, the Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. Id. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement

"ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004). Here, as explained below, the undersigned finds that the ALJ failed to provide good reasons for discounting the findings of Dr. Stanford.

First, the ALJ discounted Dr. Stanford's decision in part, due to Plaintiff's "conservative treatment". Such a finding is not supported by substantial evidence. As noted by Plaintiff, his treatment has been far from conservative. Notably, the record indicates the following relevant treatment history:

On June 4, 2013 Plaintiff treated with Robert Donovan, M.D., at McMicken Integrated Care for, inter alia, depression, anxiety, and OCD. (Tr. 286). Plaintiff was living at Tender Mercies, a shelter for homeless adults with mental illness. (Tr. 286).

On August 26, 2013, Plaintiff followed up with Sharon Stanford, M.D. and reported continuing his OCD routine in the bathroom, and that he was anxious and somewhat irritable. (Tr. 375). Examination revealed obsessive thinking, his mood anxious, and his affect irritable. (Tr. 277).

On November 20, 2013, Plaintiff followed with Dr. Stanford who noted Plaintiff was isolating, continuing with compulsive rituals, and had continued anxiety and panic attacks. (Tr. 271). He was still living at Tender Mercies. (Tr. 271). Examination revealed that Plaintiff had abnormal/psychotic thoughts with obsessions and compulsions. (Tr. 273). He also had decreased concentration. (Tr. 273). Dr. Stanford continued Plaintiff on his then current medications. (Tr. 274).

On January 16, 2014, Plaintiff treated with a therapist, Gary Lukens, LPC, at McMicken Integrated Care and reported doing better but still having OCD symptoms. (Tr. 282). Plaintiff's mood was described as anxious. (Tr. 283).

On February 18, 2014, Plaintiff saw Dr. Stanford again and reported his anxiety was somewhat better. (Tr. 267). Plaintiff continued with rituals relating to the bathroom, felt isolated, and felt "torn up inside." (Tr. 267). Dr. Stanford noted Plaintiff continued to live at Tender Mercies but that he did not like living there. (Tr. 267). Examination revealed Plaintiff was positive for compulsions and had an anxious mood with a congruent affect. (Tr. 269).

On June 10, 2014, Plaintiff again followed up with Dr. Stanford where he reported still having anxiety, compulsions, and depression. (Tr. 335). Examination revealed obsessions, compulsions, and a depressed mood. (Tr. 337). Plaintiff was also undergoing significant counseling. (Tr. 343, 362-96, 429-89).

On July 15, 2014, Plaintiff followed up with Ms. Feldman and reported "ups and downs." (Tr. 868). His GAF score was 51-60.[1] (Tr. 869).

On October 8, 2014, Plaintiff followed up with Dr. Stanford and reported panic attacks, continued rituals in the bathroom, social isolation, daily depression, and irritability. (Tr. 399). Examination revealed obsessions, compulsions, and an anxious mood. (Tr. 399).

---

[1] GAF 51-60: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupation, or schooling functioning (e.g., few friends, conflicts with peers or co-workers)." Global Assessment of Functioning (GAF) Scale, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, 1994, American Psychiatric Association.

On May 8, 2015, Plaintiff followed up with Dr. Stanford and reported feeling socially isolated, having problems sleeping, difficulty riding elevators due to anxiety, and having continual compulsions regarding going to the bathroom, turning on light switches, and counting. (Tr. 401). Plaintiff stated that if his routines are interrupted, he gets panicky. (Tr. 401). Examination revealed obsessions, compulsions, and a depressed and anxious mood. (Tr. 401).

On July 27, 2015, during therapy with Rachel Feldman Law, MSW, LSW, Plaintiff reported days of feeling depressed causing him to be unable to complete tasks; and he further had high anxiety. (Tr. 508). The report stated Plaintiff had now been at Tender Mercies for four years. (Tr. 508). Examination revealed pressured speech and a tangential thought process. (Tr. 509). Plaintiff was assigned a global assessment of functioning score of 41-50.[2] (Tr. 509).

In October of 2015, Plaintiff followed up with Dr. Stanford and reported some depression and irritability. (Tr. 403). Examination revealed continued obsessions and a slightly depressed mood. (Tr. 403). Dr. Stanford continued Plaintiff on venlafaxine and Buspirone. (Tr. 403).

On March 8, 2016, Plaintiff saw Dr. Stanford again and stated he had difficulty making appointments due to obsessions and compulsions. (Tr. 406). He reported anxiety and occasional depression. (Tr. 405). Dr. Stanford noted Plaintiff's thought content continued with obsessions such as germs and counting that interfered with function. (Tr.

---

[2] GAF 41-50: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Global Assessment of Functioning (GAF) Scale, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, 1994, American Psychiatric Association.

10

405). It was also reported Plaintiff had had claustrophobia in small spaces. (Tr. 405). Dr. Stanford further observed Plaintiff to be restless and picking at his clothing and skin. (Tr. 405).

On April 26, 2016, Plaintiff attended therapy with Cassandra Tate. (Tr. 915). On May 24, 2016, mental status examination revealed a flat affect and that plaintiff was not actively engaged in conversation stating "I just don't feel like it today." (Tr. 91)7. She assessed, "Clt making little progress." (Tr. 917).

On July 6, 2016, Plaintiff followed up with Sharon Stanford, M.D. and reported feeling panicky and down when he woke and that medication was helpful "in general." (Tr. 920). He endorsed compulsions but not getting stuck "as much" and depression. (Tr. 920). He described feeling like something bad might happen if he moved and this forces him to stay frozen in place. (Tr. 920). He endorsed switching lights on and off before using the bathroom. (Tr. 920).

On October 3, 2016, Plaintiff attended counseling with therapist Tate and reported doing "ok" but with stressors and some isolation. (Tr. 924).

On January 3, 2017, Plaintiff presented for an annual assessment with Trina Holcomb, MSW, LSW-S and reported feeling bad for the past month regarding his mental health symptoms. (Tr. 911). He noted not taking his medication as he was not sure they were working, poor sleep, restless legs, and stress. (Tr. 911).

During a follow up with Dr. Stanford, he noted "something is bothering me" and that he was irritable and not sleeping well. (Tr. 928). He endorsed anxiety, panic attacks around people, feeling like something bad was going to happen, obsessional thinking, compulsions such that he had to count before using the bathroom, chewing on his fingers,

11

and stress. (Tr. 928). He was observed as guarded by Ms. Holcomb and with an appropriate but flat affect by Ms. Tate. (Tr. 931-32).

On April 24, 2017, Plaintiff followed up with Pamela Colman, M.D. and endorsed depression and anxiety including pre restroom rituals. (Tr. 830). Plaintiff acknowledged that his rituals had gotten so long that he could not urinate very much. (Tr. 830). Dr. Donovan assessed that Plaintiff had increasingly bad rituals. (Tr. 831).

He followed up with Catherine Joyce, LSW, and reported that he was unable to move fast enough to get to the rest room so that he would wet his pants. (Tr. 834). He reported going down to the kitchen and urinating in the trashcan, having rituals related to dressing, light switches, elevators, crossing bridges, sleeping with the light on, and an inability to stop watching the television if a commercial was on. (Tr. 834).

On August 15, 2017, Plaintiff followed up with Rebecca Rice, RN for medication management and some anxiety attacks, anxiety, OCD, paranoia, feeling really down, not wanting to do anything, depression measuring a 7 out of 10 in severity, improvement in mood, isolation and wanting to stay away from others, and struggling with loss. (Tr. 949).

On March 19, 2018, Plaintiff followed up with Ms. Holcomb for an assessment and endorsed depression measuring an 8 out of 10, OCD, and that he had been out of medication for a week. (Tr. 1025).

On March 28, 2018, Plaintiff followed up with Dr. Donovan and reported OCD symptoms. (Tr. 981).

On May 7, 2018, Ms. Holcomb completed an updated assessment and Plaintiff reported that his social activity included going to the grocery store. (Tr. 1008). He reported working 24 hours per week at Tender Mercies. (Tr. 1009).

On January 27, 2019, Plaintiff followed up with Rachael Feldman, LSW and reported that things are "the same" as his last visit and that he was still at Tender Mercies. (Tr. 860). He reported little interest in doing things, feeling down, trouble falling asleep, appetite issues, feeling like a failure, and trouble concentrating. (Tr. 861) . Mental status examination revealed a tangential thought process and a GAF score of 31-40.[3] (Tr. 861).

In sum, as noted by Plaintiff, he has been living Tender Mercies, a transitional shelter for homeless adults since at least 2013. The record indicates that Plaintiff went to numerous therapy sessions for years, and was prescribed significant mental health medication. As such, Plaintiff argues that his treatment was highly consistent with disability and is seemingly the proper treatment for mental illness. The undersigned agrees.

In light of the foregoing, the undersigned agrees with Plaintiff that the ALJ erred in assessing the weight to be reasonably accorded to Dr. Stanford's opinion based on his determination that Plaintiff received only conservative treatment.

In addition, the undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the medical opinions of record. However, it appears in determining that Plaintiff's reported activities were inconsistent with Dr. Standford's assessment, the ALJ, in part, impermissibly acted as his own medical expert. *See Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115

---

[3] 31 – 40 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). Global Assessment of Functioning (GAF) Scale, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, 1994, American Psychiatric Association.

13

(3d Cir. 1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975). While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir. 1963); Clifford v. Apfel, 22.7 F.3d 863, 870 (7th Cir. 2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985); Sigler v. Sec'y of H.H.S., 892 F.Supp. 183, 187–88 (E.D. Mich. 1995)). *See also Rosa v. Callahan*, 168 F.3d 72, 78–79 (2nd Cir. 1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Here, there are no medical opinions of record that suggest Plaintiff's ability to attend scheduled medical visits, use public transportation and lack of inpatient psychiatric hospitalizations negate his severe symptoms related to his mental impairments. In making such a finding, the ALJ improperly made his own independent medical findings. Furthermore, Plaintiff's ability to perform such limited activities is not substantial evidence that his symptoms are not disabling. See 20 C.F.R. § 404.1572(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2007) (the minimal daily functions of driving, cleaning an apartment, caring for pets, laundry, reading, exercising and

14

watching the news are not comparable to typical work activities); *Cohen v. Sec'y Dept. Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992) (the fact that disability claimant continued ballroom dancing and attended law school during period for which she claimed disability benefits did not warrant a finding that she could maintain substantial gainful employment).

Here, the record indicates that Plaintiff treated with Dr. Stanford a psychiatrist, since at least 2013. Dr. Stanford completed four RFC opinions that would merit a disability finding. As noted by Plaintiff, Dr. Stanford's opinions are supported by her own examinations, and show that that Plaintiff's conditioned waxed and waned and seemingly, with the most recent treatment, was deteriorating. As such, the findings by the ALJ relating to Dr. Stanford's assessments are not supported by substantial evidence and therefore do not constitute "good reasons" for rejecting her findings. See Social Security Ruling 96–2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544

Accordingly, this matter should be remanded because there is insufficient evidence in the record to support the Commissioner's conclusions. On remand, the ALJ should be instructed to properly evaluate and weigh the opinion evidence in accordance with Agency regulations and controlling law.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174

15

(6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED** as NOT supported by substantial evidence, and **REMANDED** for further development of the record under sentence four, with this case to be **CLOSED**.

      *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| KEVIN RICHARD, | Case No. 1:19-cv-581 |
| Plaintiff, | McFarland, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

17